UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JOSHUA ROUNDTREE, | |
| Plaintiff, | |
| v. | Case No. 23-CV-552-JPS |
| MICHELLE REYNOLDS and UNCAGED MINDS PUBLISHING, | **ORDER** |
| Defendants. | |

**1. INTRODUCTION**

In March 2024, an answer to the amended complaint was filed in this matter. ECF No. 36. The answer was on behalf of named Defendants Michelle Reynolds and Uncaged Minds Publishing ("UMP") (together, "Defendants"). *Id.* In its prior order, the Court took judicial notice of public records indicating that UMP appeared to be a limited liability company (LLC) incorporated in Illinois. ECF No. 38 at 1–2. Believing that the UMP that was named as a Defendant in this matter was the same entity as the Illinois LLC bearing the same name, the Court ordered UMP to appear through counsel (and to file a new responsive pleading) or otherwise explain why it was not required to do so. *Id.* at 2–4. The Court also directed that the order be mailed to Michelle Reynolds at her Green Bay, Wisconsin address and "to Defendant Uncaged Minds Publishing at its judicially-noticed business address" in Illinois. *Id.* at 5–6.

Two relevant submissions[1] followed. First, Defendant Michelle Reynolds filed a motion to dismiss the amended complaint for lack of subject matter jurisdiction. ECF No. 40. In this motion, she also argued that UMP—the named Defendant, *not* the Illinois LLC—is not required to appear through a lawyer because UMP is not an LLC. *Id.* at 2 (arguing that a "contract was formed . . . between Michelle Reynolds, doing business as [UMP], not Uncaged Minds Publishing LLC"). Second, an individual named Donald Reynolds filed a response indicating that Uncaged Minds Publishing LLC—that is, the Illinois LLC, which the Court will hereinafter refer to as "UMPLLC"—has no contract with Plaintiff, but nonetheless responding to Plaintiff's allegations on their merits. ECF No. 41 at 2–4. Donald Reynolds further argues that, to the extent UMPLLC is required to appear in this action at all, it should not be required to appear through a lawyer because such a requirement would be a financial hardship. *Id.* at 1.

This Order parses those two submissions and determines that UMP—the party that Plaintiff has named as a Defendant—is not required to appear through counsel. Because all relevant parties (Plaintiff, UMP, and Michelle Reynolds) have appeared and have properly elected to proceed pro se, the Court outlines next steps for moving this case forward.

---

[1]Plaintiff Joshua Roundtree ("Plaintiff") also filed a submission responding to some of the allegations in the answer. ECF No. 39. Plaintiff expressed confusion that he was told he did not need to file anything at this time yet was warned that failure to make necessary filings would lead to the dismissal of his case without prejudice. *Id.* at 1.

To clarify: the Court gives this warning in all cases in which at least one party appears pro se—nothing unique about Plaintiff's case triggered it. The purposes of this warning are (1) to put all parties on notice of the importance of keeping their mailing addresses updated and (2) to give notice of the possibility of dismissal for failure to prosecute if Plaintiff stops taking any action whatsoever in his case. Plaintiff's response was not necessary, as his multiple filings in this case make it clear that he indeed intends to prosecute it.

Page 2 of 18
Case 2:23-cv-00552-JPS   Filed 05/29/24   Page 2 of 18   Document 44

## 2. STATUS OF UMP AND UMPLLC; COUNSEL REQUIREMENT

The Court has been drawn into what appears to be an interpersonal conflict between Michelle Reynolds and Donald Reynolds over (among other things) the use of the "Uncaged Minds Publishing" moniker to do business—a conflict that has no immediate bearing on Plaintiff's lawsuit. Nevertheless, some understanding of this conflict is necessary to the Court's determination of whether UMP is required to appear through counsel. Accordingly, the Court provides further details below and discusses the significance of those details.

### 2.1 UMP and UMPLLC Are Distinct Entities, and UMP is the Relevant Defendant at This Time

At the outset, the Court clarifies that Plaintiff has always been proceeding against UMP and, to date, has not indicated in his filings that he believes UMPLLC specifically (or Donald Reynolds, who purports to speak for UMPLLC) is a relevant party. *See* ECF No. 1 (superseded original complaint against UMP); ECF No. 1-1 (attachments to superseded original complaint, including letters from and checks to UMP at a Green Bay, Wisconsin mailing address); ECF No. 16 at 5 (first screening order inviting Plaintiff to file amended complaint alleging whether UMP "is a corporation or a limited liability company (or some other entity)"); ECF No. 18 at 1–2 (naming "Uncaged Minds Publishing, LLC" in caption but stating that UMP, the Wisconsin entity, was the Defendant he intended to sue); ECF No. 22 at 2 (second screening order allowing Plaintiff to proceed against UMP, which Plaintiff had pleaded was a citizen of Wisconsin). Some of Plaintiff's filings reference Donald Reynolds but do not implicate him in any allegations of wrongdoing. *See, e.g.*, ECF No. 18 at 4 (stating Plaintiff ordered "novels by author Donald Reynolds" from UMP).

On its own motion, the Court concluded that UMP and UMPLLC were the same entity. ECF No. 38 at 1–2. Such a conclusion was amply supported by evidence then available to the Court, including:

- Illinois business records, *id.*;
- The absence of Wisconsin business records for UMP or Michelle Reynolds, *see Corporate Records Search*, WISC. DEP'T OF FIN. INST., https://apps.dfi.wi.gov/apps/corpSearch/Search.aspx (last visited May 29, 2024);
- The fact that UMP and UMPLLC share the same business name aside from the LLC designation, and their alleged principals share the same surname; and
- The fact that UMP and UMPLLC's alleged principals have been sued together, with UMP, in another action in this District, *see Isiah Taylor v. Michelle Schmude Reynolds, Donald Reynolds and Uncaged Minds Publishing*, Case No. 22-CV-459-PP (E.D. Wis. 2022).

However, recent submissions have led the Court to conduct further research that calls that conclusion into doubt. Both Michelle and Donald Reynolds acknowledge that Plaintiff dealt with UMP, not UMPLLC. Michelle states that that a "'bilateral' contract was formed . . . between Michelle Reynolds, doing business as Uncaged Minds Publishing, not Uncaged Minds Publishing LLC." ECF No. 40 at 2. Donald makes similar statements. ECF No. 41 at 1–2 ("UMPLLC has never made any explicit or implicit promises to the Plaintiff, nor any commitments . . . nor has any contractual relationship ever formed or established. . . . The Plaintiff entered into a contractual agreement with a sole proprietorship[,] not an LLC."); *id.* at 3 ("Plaintiff makes clear that he issued a check to 'Michelle Reynolds' for

. . . personal service, who operated as a sole proprietorship, doing business as 'Uncaged Minds Publishing,' . . . and not under the authority or association with UMPLLC."); *id.* at 7 ("No member or manager belonging to [UMPLLC] has ever given Michelle Reynolds the express or implied authority to act as principal on behalf of [UMPLLC] [and it] has never agreed to bind itself in any manner to the Plaintiff . . . .").

Michelle Reynolds has submitted paperwork indicating that she has registered UMP as her "doing business as" designation or tradename in Wisconsin. ECF No. 40-1 at 5–7. The Court's further research indicates that she is operating as sole proprietor of UMP:



*Trademark Search*, WISC. DEP'T OF FIN. INST., https://dfi.wi.gov/Pages/BusinessServices/Trademarks/SearchRegisteredTrademarks.aspx (last visited May 29, 2024). In Wisconsin, "[s]ole [p]roprietorships can register their business name by filing a registration of Tradename." *Business Entity Frequently Asked Questions*, WISC. DEP'T OF FIN.

INST., https://dfi.wi.gov/Pages/BusinessServices/BusinessEntities/FAQ.aspx#EntityTypes (last visited May 29, 2024). This is apparently the course that Michelle Reynolds has taken to do business, notwithstanding the existence of UMPLLC.²

Though their filings show an intent to distance themselves from one another, neither Michelle Reynolds and UMP nor Donald Reynolds and UMPLLC have explicitly indicated that they are unaffiliated. That is probably because, up until recently, they were affiliated. First of all, they did business together: the website for Uncaged Minds Publishing lists Donald Reynolds as the author of many of the novels it sells, and he co-authored at least one of those novels with Michelle Reynolds. *See generally* https://uncagedmindspublishing.com/ [https://perma.cc/K9CV-56WU] (last visited May 29, 2024). Additionally, it appears that they were or are married. Donald Reynolds states that "UMPLLC, within the past year[,] has filed for an injunction, asking the state court to direct Michelle Reynolds to Cease and Desist with using the name[] Uncaged Minds Publishing, upon becoming aware of her business dealings with prisoners." ECF No. 41 at 5. The Court has not uncovered any legal actions fitting that exact description, however, it has located a Wisconsin state court divorce action that appears to be relevant. *See In re the Marriage of Donald Maurice Reynolds and Michelle*

---

²As an aside: Donald Reynolds appears to be a federal prisoner who has been in custody for over 16 years. *See United States v. Donald M. Reynolds*, Case No. 06-CR-81-2, ECF No. 159 (S.D. Ga. Aug. 6, 2007) (sentencing judgment imposing 420 months' imprisonment). He incorporated UMPLLC in 2020, while incarcerated. ECF No. 38 at 2 (citing Illinois business record). He is incarcerated at FCI Beckley in West Virginia, *see* ECF No. 41-1 and *Inmate Locator*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited May 29, 2024), but his filings—like the Illinois business record—give Illinois return addresses. ECF No. 41 at 6, 7. How Donald Reynolds organized and continues to run a business from inside federal prison is anyone's guess.

*Schmude Reynolds*, Brown County Case No. 2023FA000206, *available at* https://wcca.wicourts.gov (last visited May 29, 2024). In that action, Donald Reynolds moved to "Direct[] [Michelle Reynolds] to Release All Business Files," to "Order [Michelle Reynolds] to Complete Publishing Project," and to "Direct [Michelle Reynolds] to Turn Over Passwords/Log-ins." *Id.*, April 28, May 10, and May 18, 2023 docket entries. The action was dismissed and closed without entry of a divorce judgment. *See id.*, June 7, 2023 docket entry. It is clear that Michelle and Donald Reynolds and UMP/UMPLLC are all interrelated in some capacity, and also that that interrelationship has become strained.

Bringing the discussion back to the current case before the Court: all of this background establishes that UMP and UMPLLC are distinct entities, and that UMP is the relevant Defendant at this time. The Court draws this conclusion based on (1) Plaintiff's having always alleged that he was dealing with Michelle Reynolds and UMP, *not* Donald Reynolds and UMPLLC, (2) Michelle and Donald Reynolds's representations that Plaintiff was dealing with UMP, *not* UMPLLC, and (3) the Court's own research indicating that Michelle Reynolds is apparently operating UMP as a Wisconsin sole proprietorship separately from, and perhaps without the consent of, Donald Reynolds and UMPLLC.[3] Plaintiff, Defendants, and Donald Reynolds/UMPLLC understood and understand that Plaintiff's

---

[3]Whether Michelle Reynolds is validly using the UMP moniker and whether UMPLLC is complying with business registration requirements in all those states in which it operates are separate issues that are **not** the subjects of this lawsuit, and this case is not the place for Michelle and Donald Reynolds to litigate them. The Court takes no position on these matters. Although both Michelle and Donald Reynolds express reluctance to get attorneys, the Court cautions them that it may be advisable to do so, if only to help them resolve their tangled interpersonal and business affairs.

beef is with Michelle Reynolds/UMP, and the Court now understands the same. Accordingly, the Court proceeds to determine whether UMP is required to appear through counsel.

### 2.2 UMP Is Not Required to Appear Through Counsel

Now being satisfied that UMP is Michelle Reynolds's sole proprietorship, the Court will permit Michelle Reynolds to appear on its behalf, which is functionally the same as her appearing on her *own* behalf. Gen. L.R. 83(e); *United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008) ("A sole proprietorship may litigate pro se . . . because it has no legal identity separate from the proprietor [her]self." (citations omitted)). She should note that, because UMP is her sole proprietorship, if Plaintiff prevails in this action, she can be held personally liable and any judgment can be satisfied with her personal assets. *See Jeroski v. Fed. Mine Safety & Health Rev. Comm'n*, 697 F.3d 651, 652 (7th Cir. 2012) ("A proprietorship is not a legal entity, but merely a name under which the owner, who is the real party in interest, does business." (citing *York Group, Inc. v. Wuxi Taihu Tractor Co.*, 632 F.3d 399, 403 (7th Cir. 2011); *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997); and 5 U.S.C. § 504(b)(1)(B))); *Kuryakyn Holdings, Inc. v. Abbe*, No. 09-CV-702-WMC, 2013 WL 12234625 (W.D. Wis. Mar. 4, 2013) ("JIT structured as a sole proprietorship allows the plaintiff to hold Abbe personally liable, not just the assets of the JIT business, which normally would not be the case if JIT were a separate legal entity, such as an LLC or corporation."). Together with this warning, the Court reminds Defendants—and Plaintiff—that they may choose to seek legal representation at any time.

For this reason, the Court rescinds its prior finding that the answer Michelle Reynolds filed does not represent UMP's position. ECF No. 38 at

Page 8 of 18
Case 2:23-cv-00552-JPS    Filed 05/29/24    Page 8 of 18    Document 44

2. The answer filed at ECF No. 36 is reinstated as the operative pleading for both Defendants (which, as noted above, are the same legal entity).

Defendants' motion to dismiss the amended complaint for lack of subject matter jurisdiction, ECF No. 40, must be denied without prejudice for two reasons. First, Defendants' answer did not challenge subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b) ("A motion asserting [lack of subject matter jurisdiction] must be made before pleading [i.e., filing an answer] . . . ."). If Defendants intended to challenge subject matter jurisdiction, the generally accepted practice to do is to raise this issue in a motion to dismiss *instead of* filing an answer. However, the Court may consider whether it has subject matter jurisdiction at any time—Defendants may raise this issue again later, or the Court may examine it of its own accord. Fed. R. Civ. P. 12(h)(3). Yet Defendants' motion to dismiss must be denied for a second, independent reason: it fails to comply with this Court's protocols for such motions. ECF No. 33.[4] For these reasons, the Court must deny the motion to dismiss for lack of subject matter jurisdiction without prejudice. The Court notes, however, that this decision is not a finding that it, indeed, has subject matter jurisdiction over this case; the Court will revisit that determination after discovery has been completed, as outlined in the next section. Because the motion is denied, the Court disregards all factual allegations therein except those pertaining to the determination of whether UMP must appear through counsel.

Finally, for all the reasons stated earlier, the Court is obliged to find that UMPLLC is not a party to this lawsuit. Accordingly, the Court will direct that the Clerk of Court strike Donald Reynolds's filings, ECF Nos. 41,

---

[4]The Court will direct the Clerk of Court to mail a copy of those protocols to Defendants.

Page 9 of 18
Case 2:23-cv-00552-JPS    Filed 05/29/24    Page 9 of 18    Document 44

42, 43, and remove him as an Interested Party. The Court will mail a copy of this Order to Donald Reynolds as a courtesy but will not mail future filings to him (he may, of course, track the case's progress on PACER). The Clerk of Court is further directed to update UMP's address to be the same as Michelle Reynolds's, removing the Illinois address. The Court will mail all future orders to Michelle Reynolds and UMP at their Green Bay address. Plaintiff, too, must serve his filings on Defendants at their Green Bay address, but need not serve anything on Donald Reynolds or UMPLLC at the Illinois or West Virginia addresses they have used.

3.  **NEXT STEPS: DISCOVERY AND SCHEDULING**

With the matter of representation sorted out, this case can finally proceed to fact discovery. Because the Court is in the unusual position of both sides in this matter being unrepresented, it will take a much more hands-on role in guiding this process than it typically would in a civil case.

As further detailed below, Defendants' answer contradicts (and therefore, in essence, denies) many of Plaintiff's allegations. *Compare* ECF No. 36, *with* ECF Nos. 18 (amended complaint) and 22 (order screening amended complaint).[5] In short, the parties could not be further apart in their accounts of what actually happened.

---

[5]Defendants' answer is not in the form contemplated by Rule 8, which instructs a party to "state in short and plain terms its defenses to each claim asserted against it" and to "admit or deny the allegations asserted against it." Fed. R. Civ. P. 8(b)(1). Rule 8 does not contemplate, as Defendants have submitted, the provision of a conflicting narrative-style monologue. Nevertheless, the Court considers Defendants' answer as submitted in light of their pro se status. *United States v. Cox*, 54 F.4th 502, 510 (7th Cir. 2022) ("We . . . tend to apply more liberal standards to litigants proceeding pro se, including (maybe especially) in the procedural context.") (citing *Blitch v. United States*, 39 F.4th 827, 833 & n.2 (7th Cir. 2022)).

As a preliminary matter, the Court notes that the parties' pleadings reveal a possibility that the controversy between them could be resolved without further litigation. Defendants allege that Plaintiff was required to designate someone to establish an Amazon or Kindle account on his behalf, in which Defendants would then upload his publications for sale and download—but that Plaintiff did not do so. ECF No. 36 at 1–2 ("[W]e waited patiently for his family to establish the Amazon account and enter personal data. . . . I sent all his files to the email and sent Mr. Roundtree the login information for the email account so he could have his family upload the books to Amazon when they completed the setup of the account."). According to Defendants, Plaintiff's publications are ready to be released, and the only pending matter is Plaintiff's establishment of an Amazon/Kindle Publishing Direct account. If this is true, Plaintiff should consider following Defendants' advice, as doing so would achieve what Plaintiff originally set out to do: have his books published. The Court is aware that Plaintiff is upset with other parts of his interaction with Defendants, such as the amount of typographical errors in the manuscripts Defendants turned over to him, but it urges him to consider whether simply cooperating with Defendants to complete the process of publishing his works on Amazon/Kindle Publishing Direct might be a more favorable outcome than lengthy, costly, and contentious litigation.

In any event, considering the parties' vastly differing versions of the story—which almost certainly cannot both be true—the Court takes this opportunity to remind them that

> [b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an . . . unrepresented party certifies that to the best of the person's knowledge, information, and belief, . . . it

> is not being presented for any improper purpose, such as to harass[;] . . . the factual contentions have evidentiary support or . . . will likely have evidentiary support after . . . discovery; and the denials of factual contentions are warranted on the evidence . . . .

Fed. R. Civ. P. 11(b). In other words: **both Plaintiff and Defendants must tell the truth**, to one another and to the Court, and they may not advocate positions that they know, or have reason to believe, are not backed up by evidence. If the Court determines that a party has violated this rule, it may sanction the party, including but not limited to imposing monetary penalties, dismissing the case, or both.

In a typical case in which one or both sides are represented by attorneys, after the complaint and answer are both filed, the case proceeds to discovery—that is, the parties, through their attorneys, exchange documents and evidence that they believe support their respective positions. The Court will now direct that the parties exchange discovery in this matter. Given that both parties in this matter are proceeding pro se, and Plaintiff is incarcerated, the Court is obliged to provide the parties with some basic guidance in the discovery process. The Court first recaps the relevant allegations to guide the discovery in this matter.

Plaintiff claims that, while in prison, he wrote two books and then signed a contract with Defendants to publish those two books at the cost of $900 and to type another manuscript of his at the cost of $175. ECF No. 22 at 3. Defendants state that they negotiated with Plaintiff to publish two books for him for a lower price—$699—and sent him a contract to sign memorializing this agreement; however, they state that Plaintiff never

signed and returned that contract. ECF No. 36 at 1.[6] Defendants state that Plaintiff only ever paid them $100. *Id.* Meanwhile, Plaintiff states that he sent Defendants a check for $1,105 from his inmate trust account (for publication of his two books, typing the manuscript, and to purchase two novels) and notes that Defendants "offered to return" $100 of what he sent. ECF No. 18 at 4.

Defendants ultimately declined to publish Plaintiff's books for several reasons. They state that their publishing contract imposes a 285-page limit on books accepted for publication (and offer a blank sample "publishing contract," which indeed so states, ECF No. 36-1 at 3). ECF No. 36 at 1. They further state that Plaintiff did not disclose the page counts of his two books early in the negotiations process, even when asked, and only later did they find out that his books were 504 and 526 pages. *Id.* They state that they would never have agreed to the price of $699 if they knew Plaintiff's books were of this length. *Id.* Plaintiff, for his part, denies that Defendants ever discussed a page limit with him and essentially maintains that there was no page limit "in the contract." ECF No. 18 at 4. Additionally, Defendants say that, late in the publication process, Plaintiff wanted to rewrite portions of his books, but Defendants declined to incorporate his rewrites because the publication contract states that rewrites are not allowed. ECF No. 36 at 1–2.

Plaintiff claims that he lost out on $100,000 in profits when his books were not published. ECF No. 18 at 6.

---

[6]Although the factual allegations in Defendants' motion to dismiss are disregarded at this stage of the litigation, it is worth noting that they tell a different story about the amount that Plaintiff agreed to pay them and whether the parties entered into a valid contract. *See* ECF No. 40 at 1–2.

Page 13 of 18
Case 2:23-cv-00552-JPS    Filed 05/29/24    Page 13 of 18    Document 44

Now that the case is proceeding to discovery, each party must present evidence to the Court tending to support his or her position, including the following:

- A copy of the contract that Plaintiff alleges that he signed with Defendants;[7]

- A copy of the contract that Defendants allege that they sent to Plaintiff and which Plaintiff did not return, if it is available (the blank sample publishing contract at ECF No. 36-1 does not meet this requirement);

- Any written correspondence (emails, letters, etc.) between Plaintiff and Defendants relating to this transaction, including Plaintiff's alleged request for rewrites;

- Evidence from Defendants verifying their contention that Plaintiff only ever paid them $100;

- Statements from Plaintiff's inmate trust account showing whether he sent checks to Defendants and whether these amounts were actually deducted from his account;

- Evidence from Defendants supporting their contention that they "completed the job [they] were hired to do," ECF No. 36 at 2, such as copies of the files allegedly sent to Plaintiff by email and/or screenshots of said emails;

- Evidence from Plaintiff that supports his position that he lost $100,000 in profits when his books were not published—for

---

[7]In a recent letter to the Court, Plaintiff stated that he has a "copy of [the] contract," ECF No. 34-1, and that he has correspondences with Defendants "supporting the facts that [they] breached the contract." ECF No. 34 at 1. The Court will direct that the Clerk of Court include a copy of this letter with this Order when it is mailed to Defendants.

> example, evidence that books Defendants have published make that much money, or that similar books to those he has written tend to garner that much profit; and
> 
> - Any other documents that Plaintiff or Defendants believe would support their positions in this case.

Suitable evidence may include, as appropriate, affidavits or declarations—*i.e.*, statements—made, dated, and signed by a party under penalty of perjury and verified as true and correct. The parties should submit a copy of the above-described material to: (1) the Court and (2) the opposing party,[8] **and** should keep a copy for themselves. The parties must submit this material not later than **August 28, 2024.**

Upon receiving all this material, the Court will determine next steps. Next steps might include holding an evidentiary hearing to take testimony from the parties. Alternatively, the Court may be able to resolve this case on the written submissions alone, such as by dismissing this case for lack of subject matter jurisdiction (if Plaintiff cannot satisfactorily prove his proposed damages) or granting summary judgment to one party or

---

[8]Moving forward, Plaintiff and Defendants must serve—that is, mail to—one another a copy of any and all documents that they file in this case. *See* Fed. R. Civ. P. 5(a) (requiring that "discovery paper[s]," "written motion[s]," and "written notice[s], appearance[s], demand[s], or offer[s] of judgment, or any similar paper[s]" be served on "every party"). Defendants shall mail all filings to Plaintiff at his place of confinement:

> Inmate No. 54569-039
> Yazoo City Federal Correctional Institution (Low)
> Inmate Mail/Parcels
> P.O. Box 5000
> Yazoo City, MS 39194

Plaintiff shall mail all filings to Defendants at the Green Bay address at which they were served, which is indicated below.

another. In any event, the Court will consider the parties' evidence and determine what further action is warranted.

The parties are reminded that mediating their dispute before a magistrate judge in this District remains an option. They should note that

> [a] mediator—even one who is a judge—cannot force a resolution or settlement. A mediator cannot coerce one side or the other into settling. A mediator cannot order the parties to settle, or order one party to accept another's terms. The mediator's job is . . . to facilitate the exchange of information that would help the parties—BOTH parties—craft their own settlement. If parties have had difficulty negotiating because of ill will on the part of a litigant or a lawyer, the mediator can be the "go-between" to open the lines of communication. If one party has an unreasonable expectation as to the strength of her case, the mediator can act as a "reality check." If a party seeks a resolution of the kind that a court cannot give—if one party, for example, needs to hear an apology from the other—a mediator can make arrangements for that to occur, if both parties are willing. But it is not the mediator's role to say to Party A: "Look, Party B is entirely right you and you are entirely wrong, so you should just give them what they want."

*Andersen v. Vavreck*, No. 15-CV-667-PP, 2016 WL 7839152, at *1 (E.D. Wis. Mar. 10, 2016). Understanding that mediation requires the parties to approach their dispute with flexibility and open-mindedness, if the parties are willing to submit their dispute to mediation, they may request it in writing, and the Court will refer the matter for mediation as appropriate.

Finally, the Court takes this occasion to address a recent letter from Plaintiff expressing concern about the cost of personal service by the U.S. Marshals ("Marshals"). ECF No. 32. Plaintiff expressed a preference for service by mail, ECF No. 23, which the Court ordered and which the Marshals attempted, ECF Nos. 24 and 25. Service by mail was unsuccessful. ECF Nos. 26, 27. Therefore, the Court ordered the Marshals to attempt

Page 16 of 18
Case 2:23-cv-00552-JPS    Filed 05/29/24    Page 16 of 18    Document 44

personal service on Defendants, which was successful. ECF Nos. 28–31. Defendants since appeared and have defended this lawsuit. ECF No. 36.

Serving the complaint on the defendant is a requirement in any civil lawsuit, which the Court cannot waive. *See generally* Fed. R. Civ. P. 4. Plaintiff elected service by the Marshals and was made aware that the Court could not waive service fees. ECF No. 24 at 1; ECF No. 28 at 2. The service fees are the "cost of doing business" in his suit against Defendants. The Court understands that Plaintiff is financially constrained—like many pro se litigants—but is not able to waive the costs he has incurred or will incur in pursuing this lawsuit that he initiated.

Accordingly,

**IT IS ORDERED** that Defendants Michelle Reynolds and Uncaged Minds Publishing's motion to dismiss, ECF No. 40, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that non-party Donald Reynolds's filings, ECF Nos. 41, 42, and 43, be and the same are hereby **STRICKEN**;

**IT IS FURTHER ORDERED** that the Clerk of Court mail a copy of this Order to Donald Reynolds at the address on the docket and thereafter terminate Donald Reynolds as an Interested Party in this case;

**IT IS FURTHER ORDERED** that the Clerk of Court mail a copy of this Order, together with Plaintiff Joshua Roundtree's letter and attachment, ECF No. 34, and the Court's pretrial procedures order and attachment, ECF No. 33, to Defendants Michelle Reynolds and Uncaged Minds Publishing at the address at which they were served:

253 N. Baird St.
Green Bay, Wisconsin, 54301

Further, the Clerk of Court shall add this address to the docket as both Defendants' address of record and shall mail all future orders to Defendants at this address; and

**IT IS FURTHER ORDERED** that not later than **August 28, 2024**, the parties submit to the Court and to one another the above-described discovery material.

Dated at Milwaukee, Wisconsin, this 29th day of May, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge