UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JOSHUA ROUNDTREE,<br><br>                Plaintiff,<br><br>v.<br><br>MICHELLE REYNOLDS and<br>UNCAGED MINDS PUBLISHING,<br><br>                Defendants. | Case No. 23-CV-552-JPS<br><br>**ORDER** |

**1.    INTRODUCTION**

This matter, pending since May 2023, ECF No. 1, and in which both sides proceed pro se, more appropriately belongs in state small-claims court, but it has so far managed to remain in federal court, ostensibly on diversity jurisdiction. ECF No. 22 at 3; ECF No. 44 at 8. Plaintiff Joshua Roundtree ("Roundtree") accuses Michelle Reynolds ("Reynolds") and her sole proprietorship Uncaged Minds Publishing ("UMP") (together, "Defendants") of violating their contract to publish two of Roundtree's books, and he seeks to recover what he paid Defendants for this publication deal plus his lost profits. *See generally* ECF No. 18.

Because both sides are unrepresented, the Court directed the parties to submit all the evidence related to their claims so that the Court could consider the entire record before it and "determine what further action is warranted" in this case. ECF No. 44 at 15–16. The parties have done so. Based on all the information before it, the Court concludes that it lacks

subject matter jurisdiction over the case and accordingly is constrained to dismiss it without prejudice.¹

## 2. RELEVANT FACTS

The Court instructed the parties to exchange and submit copies of the contract(s) that governed the alleged publication deal, "written correspondence . . . relating to this transaction," evidence of payments or lack thereof, evidence of work Defendants completed for Roundtree, and evidence supporting Roundtree's contentions as to lost profits. *Id.* at 14–15. The Court has reviewed the parties' submissions pursuant to this directive, together with the operative pleadings, and constructed the following narrative of what happened between Roundtree and Defendants.

Roundtree is a federal prisoner. *See* ECF No. 18 at 1 (listing address at federal correctional institution); *see also* Inmate Locator, FEDERAL BUREAU OF PRISONS , *available at* https://www.bop.gov/inmateloc/ (last visited Mar. 12, 2025) (reflecting continued federal custodial status). UMP holds itself out as a publisher and offers to distribute works authored by incarcerated people like Roundtree. *See* ECF No. 47 at 4 ("[Defendants] took out an ad in Kite Magazine, . . . advertis[ing] 'self-publishing.'"). Reynolds is UMP's sole proprietor, meaning that Defendants are treated as one and the same for legal purposes. ECF No. 44 at 5–6, 8.²

---

¹Non-party Donald Reynolds, *see* ECF No. 44 at 3–8 and 9–10, has filed several motions. ECF Nos. 48, 49, and 52. Because Donald Reynolds is not a party, has not been permitted to intervene in this case, and seeks relief that is not relevant to the case at bar, those motions will be denied as moot. *See* ECF No. 44 at 3 ("The Court has been drawn into what appears to be an interpersonal conflict between Michelle Reynolds and Donald Reynolds . . . that has no immediate bearing on [Roundtree's] lawsuit."); *id.* at 6–7 (detailing Michelle and Donald Reynolds' state divorce matter).

²As the Court previously explained, "[w]hether Michelle Reynolds is validly using the UMP moniker" notwithstanding the existence of a limited

Page 2 of 13
Case 2:23-cv-00552-JPS   Filed 03/12/25   Page 2 of 13   Document 56

Roundtree claims that he signed a contract with Defendants to publish two books he wrote while incarcerated. ECF No. 18 at 2, 4. Defendants seem to agree that they had a two-book publishing contract with Roundtree. ECF No. 36 at 1. The parties have submitted different documents that they refer to as their contract, each of which contains different terms.

Roundtree proffers as the parties' contract a series of documents that bear his and Reynolds's signatures. ECF No. 45-1. That series of documents shows the parties agreeing first to an "Exclusive Plat[in]um Publishing Contract" by which Defendants would publish two of Roundtree's books for $900, with Roundtree to provide his own cover art and Defendants offering no editing service on his novels. *Id.* at 2. Reynolds signed and dated that document on July 13, 2020, and Roundtree signed and dated it on July 24, 2020. *Id.* The parties then renegotiated a "new contract," *id.* at 4, by which Defendants would still publish two of Roundtree's books, again with Roundtree providing his own cover art and Defendants not furnishing any editing service, *id.* at 6. This version of the contract further specifies that Defendants would offer Roundtree "the Plat[in]um package" for one book and "the silver" package for his other book, resulting in a lower cost of $800.00. *Id.* Roundtree signed and dated that document on July 27, 2020, and Reynolds signed it on August 7, 2020. *Id.* Neither version of the contract that Roundtree filed defines what a "Plat[in]um" or "Silver" publishing package means or includes.

---

liability company with the same name, incorporated in Illinois and registered to Donald Reynolds, "[is] **not** the subject[] of this lawsuit." ECF No. 44 at 4, 6 n.2, and 7 & n.3.

Page 3 of 13
Case 2:23-cv-00552-JPS    Filed 03/12/25    Page 3 of 13    Document 56

Defendants assert that they agreed to different terms with Roundtree. They do not have any document signed by both parties, though; they instead submit "a blank copy of [Defendants'] contract," presumably the standard contract it offers to all individuals interested in Defendants' services. ECF No. 36 at 2. Defendants say that they agreed with Roundtree that he would pay $699 for a two-book contract, *id.* at 1, and indeed the unsigned, blank contract they submitted provides that Defendants' "Platinum Package" costs $699. ECF No. 36-1 at 1.[3] Platinum is apparently one of four packages that Defendants offer, together with Silver, Gold, and Diamond, which increase in price ($399, $499, and $999, respectively) and which include increasingly more benefits such as cover design, promotional materials, creation of social media accounts and websites on the author's behalf, editing, and typing. *Id.* The unsigned, blank contract further provides that "[t]he price quoted is for books 285 pages or less" and that "[n]o rewrites are allowed," presumably after the point when the manuscripts were submitted to Defendants. *Id.* at 3.

Defendants state that they sent Roundtree a blank copy of their version of the contract (without saying when they allegedly sent it) but that Roundtree never signed or returned it. ECF No. 36 at 1. Roundtree insists that the blank contract that Defendants offer is not relevant because he "NEVER agreed to [Defendants'] standard contract" and instead the parties formed a "special contract." ECF No. 45 at 2; *see also* ECF No. 47 at 1 ("The agreement [Roundtree submitted] is signed by both parties, conflicting with

---

[3]However, in a motion to dismiss which the Court denied without prejudice, Defendants state that the parties agreed to a cost of $900. ECF No. 40 at 1; ECF No. 44 at 9. Though the Court disregards Defendants' factual allegations in that motion, the inconsistency is noteworthy—why don't Defendants have their story straight?

. . . Reynolds misleading the courts into believing that we had any other existing agreement."). He acknowledges that Defendants emailed him the above-referenced standard contract, but he contends they only did so "three years after the real contract." ECF No. 47 at 1 (citing ECF No. 47-1 at 13 (March 16, 2023 email from Reynolds to Roundtree enclosing same blank contract as described above)). Defendants counter that Roundtree "picked and chose" from the parties' correspondence and "did not submit the earlier messages where [they] sent out the standard contract." ECF No. 50 at 2. But Defendants have not submitted documents substantiating when, prior to March 2023, they sent such messages or their standard contract to Roundtree.

Although it is not clear whether the parties were ever on the same page about their respective obligations, they each accuse one another of violating the terms of the contract in some way. *See generally* ECF Nos. 18 and 36.

Roundtree says Defendants breached the contract because, to date, they have not published or finished editing his books and refuse to refund his payments. ECF No. 18 at 5; ECF No. 45 at 1; *id.* at 2 (alleging that Defendants "never even proofed book one" and "never finished the proof of book two"). Defendants counter that Roundtree himself is the barrier to publication. They say that Roundtree's books *are* ready to be self-published through Amazon Kindle Direct Publishing ("Amazon KDP") but that Roundtree has failed to get a trusted person outside of prison to activate the Amazon account for him in order to permit Defendants to post the books there. ECF No. 36 at 1–2; *see also* ECF No. 50 at 1.[4] As to editing, Defendants

---

[4] Neither version of the contract discusses the requirement that the author designate a trusted person outside of prison to set up an Amazon KDP account for

contend that they "did all the edits in book one" and completed the edits they could in book two. ECF No. 47-1 at 38. They further argue that Roundtree has caused or contributed to the delays in publication. *See, e.g.*, ECF No. 36 at 1 ("[A]fter nearly five months of waiting we received [communication from Roundtree]."); *id.* at 2 (noting that Roundtree submitted rewrites even though standard contract does not permit them and then "did not respond to [Defendants] again for nearly 8 months"). Roundtree counters that draft manuscripts that he has received from Defendants were riddled with errors, rendering them unfit for publication as-is on Amazon KDP, and that Defendants are the source of the delay, having at various times ceased communicating with him or updating him. ECF No. 18 at 3; ECF No. 45 at 2; ECF No. 47 at 4–5.

For their part, Defendants say that Roundtree is in breach—or that they at least had good reason not to publish his books or to delay doing so—because he submitted manuscripts in excess of the purported contractual 285-page limit. ECF No. 36 at 1. Roundtree denies agreeing to any page limit, ECF No. 45 at 2, and says he informed Defendants of the length of his manuscripts before he sent them in, ECF No. 47-1 at 37 ("YOU

---

them. Defendants state that they have this requirement because establishing such an account "require[s] personal information that [Defendants] don't need nor . . . want to be responsible for." ECF No. 36 at 1.

Roundtree told Defendants in April 2023 that he already "ha[s] a KDP account ([in] [his] name)," with "all the necessary info . . . on there." ECF No. 47-1 at 32. Defendants say essentially the same thing. ECF No. 36 at 2 ("I sent all his files to the email [created for Roundtree] and sent [him] the login information for the email account so he could have his family upload the books to Amazon [KDP] when they completed the setup of the account."). But Roundtree has indicated a reluctance for Defendants to publish his work to Amazon KDP for him at this point. ECF No. 51 at 1; *see also* ECF No. 47-1 at 32 ("My family/friends ARE NOT publishers. YOU [were] paid to publish my books. NOT THEM! [T]hey have no clue of how to up load [*sic*] a book.").

knew the page count because I told you."); *see also id.* at 32 ("You could've simply sent my money back when you [saw] the page count. YOU chose to move forward with [the contract].").[5] Defendants deny that they knew or that Roundtree informed them of the page count before they received his manuscripts and state that they would not have contracted with Roundtree at all if they knew the length of the manuscripts. ECF No. 36 at 1 ("Roundtree was asked on numerous occasions the page count of these books. His response was, "not many."); ECF No. 47-1 at 37.[6]

As for damages, Roundtree seeks the money he paid to Defendants, which totals $900. ECF No. 47-1 at 19, 21, 23 (checks for $400, $400, and $100, made out to one or both Defendants); *id.* at 30 (seeking refund from Defendants of "the $900.00 I paid you to publish my book[s]").[7] He says that he eventually "paid a new company to publish book one," which "cost[] [him] A LOT more money," though he does not say how much, or seek this amount in damages. ECF No. 47 at 5; ECF No. 46 at 2 (requesting as a settlement option that Defendants publish book two only); *see also* ECF No.

---

[5] Roundtree has not provided any documentation supporting the contention that he informed Defendants of the length of his manuscripts at any time before the above-cited March 2023 email.

[6] It appears that, whatever the parties decided with respect to cover art and design, this term of the parties' agreement is no longer at issue. *See* ECF No. 36 at 1 ("Mr. Roundtree decided to pay additional fees to have [Defendants] complete both cover designs for his books. . . . [W]e received two images that Mr. Roundtree wanted to use . . . on his cover designs. We completed the designs and sent to Mr. Roundtree for his approval."); ECF No. 47 at 3 ("Copies of the original covers submitted." (citing ECF No. 47-1 at 25–26)).

[7] Roundtree also still appears to seek $150 or $175 in damages because Defendants promised to type a third manuscript for him but failed to do so. ECF No. 22 at 3 (citing ECF No. 18 at 4, 6; ECF No. 47-1 at 41 ("You OWE me $150 just from the manuscript you [were] paid to type and didn't.")). Defendants appear to admit this. ECF No. 47-1 at 30 ("[Y]ou are owed $150[] [f]or the typing job you hired me to do, but we never received the manuscript.").

51 at 2 (rejecting Defendants' settlement offer to publish both books because "book one has changed" so "the works submitted to . . . Reynolds many years ago CANNOT be used.").

He further claims that he lost out on $100,000 in profits due to Defendants not publishing his books. ECF No. 18 at 6. After accepting this allegation as true at the complaint stage, ECF No. 22 at 3, the Court ordered Roundtree to back it up with

> [e]vidence . . . that supports his position that he lost $100,000 in profits when his books were not published—for example, evidence that books Defendants have published make that much money, or that similar books to those he has written tend to garner that much profit[.]

ECF No. 44 at 14–15. Roundtree has not directly responded to this prompt, but he speculates in his filings that his lost profits are high. ECF No. 45 at 1 ("Who knows, maybe I could have had an international best seller on my hands."); ECF No. 47 at 5 ("I personally value my manuscripts at $100,000.00. . . . [W]ho's to say that I cannot be the next Steinbeck, Patterson, Grisham, Sheldon, Faulkner, King, Hemingway or at least Mosley. . . I could have possibly earn[ed] MILLIONS!").

3. **LAW & ANALYSIS**

The Court ordered the parties to submit relevant evidence so that it could determine whether it could "resolve this case on the written submissions alone" as opposed to holding a hearing or taking testimony. ECF No. 44 at 15. The Court noted the possibility that, based on the evidence submitted, it may "dismiss[] this case for lack of subject matter jurisdiction (if Plaintiff cannot satisfactorily prove his proposed damages) or grant[] summary judgment to one party or another." *Id.* at 15–16; *id.* at 9 ("The Court will revisit th[e] [subject matter jurisdiction] determination after discovery has been completed . . . .").

"When there are no issues of material fact in dispute, a district court may grant summary judgment on its own motion—as long as the . . . part[ies] [are] given notice and an opportunity to come forward with [their] evidence. *Osler Inst., Inc. v. Forde*, 333 F.3d 832, 836 (7th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) and *Goldstein v. Fidelity and Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 750 (7th Cir. 1996) ("The party against whom summary judgment is entered must have notice that the court is considering dropping the ax on [it] before it actually falls.")).

The Court gave notice to the parties of the possibility that summary judgment could be entered, but after review of the record, the Court is not able to grant summary judgment to either side. The parties do not agree, and the Court cannot determine, (1) what the contract required them each to do or (2) whether each party has actually done what it was required to do. A prime example of this is the alleged page limit in the version of the contract that Defendants proffer. If the parties never actually agreed to this page limit, then it seems that Defendants have no leg to stand on in using the length of the manuscripts to justify delays or failure to publish Roundtree's work. But resolving with finality the issue of whether the parties actually agreed to such a page limit would require the Court to "weigh credibility . . . or resolve swearing contests" between Roundtree and Defendants, which it cannot do at summary judgment. *Flowers v. Renfro*, 46 F.4th 631, 636 (7th Cir. 2022) (citing *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

What is clear and undisputed on the record before the Court, though, is that Roundtree has failed to establish with acceptable evidence that his alleged damages meet the amount in controversy jurisdictional threshold.

28 U.S.C. § 1332(a) (providing for federal diversity jurisdiction "where the matter in controversy exceeds . . . $75,000").

"Generally the amount in controversy claimed by a plaintiff in good faith will be determinative on the issue of jurisdictional amount, unless it appears to a legal certainty that the claim is for less than that required by the rule." *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938) and *Gibbs v. Buck,* 307 U.S. 66, 72 (1939)). "[I]f the court's jurisdiction is challenged as a factual matter by . . . the court"—as it was in this case, ECF No. 44 at 9—the plaintiff must establish that jurisdiction exists by "competent proof," which "has been interpreted to mean a preponderance of the evidence or 'proof to a reasonable probability that jurisdiction exists.'" *Id.* (quoting *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) and *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993) and citing *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979)); *see also* 14B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Jurisdiction and Related Matters § 3702 (5th ed. 2024) ("The legal-certainty concept appears equivalent to a conclusion that as a matter of law the jurisdictional amount cannot be recovered or, stated differently, no reasonable jury could award that amount.").

"We may look to post-filing events, including production of evidence during discovery, to the extent they 'clarify what the plaintiff was actually seeking' at the beginning of the case." *Sykes v. Cook Inc.*, 72 F.4th 195, 209–10 (7th Cir. 2023) (quoting *Carroll v. Stryker Corp.*, 658 F.3d 675, 680–81 (7th Cir. 2011) and citing *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 155 (5th Cir. 2018)); *Brand Servs.*, 909 F. 3d at 155 (explaining that when the complaint does not make it "facially apparent" that more than $75,000

is in controversy, the court may look to "summary judgment-type evidence" (quoting *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998))).

The Court earlier suggested to Roundtree specific examples of evidence that might be acceptable to demonstrate his lost profits. ECF No. 44 at 15. Roundtree had many months to gather and submit such evidence as to lost profits, but he has failed to do so. He insists that he has lost profits of $100,000 or more, but nothing he has submitted would permit the Court or any reasonable jury to infer this. This is not a judgment on the quality of Roundtree's books, which the Court has not read. Rather, it simply means that Roundtree's *speculation* that his books could be bestsellers and his personal valuation of his work are not sufficient to establish, for purposes of diversity jurisdiction, that he likely lost $100,000 in profits because his books were not published.

The Court therefore can no longer consider Roundtree's asserted lost profits in determining whether the amount in controversy is met in this case. The only damages Roundtree has shown with competent proof are the $900 in publication fees that he paid to Defendants plus the $150 or $175 he paid to Defendants to type a third manuscript for him, *see supra* note 7. These amounts total no more than $1,075, which is far short of the $75,000 amount in controversy required to establish and maintain diversity jurisdiction. 28 U.S.C. § 1332(a). Accordingly, the Court is constrained to dismiss this case without prejudice for lack of jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Dismissal without prejudice means that Roundtree can refile the lawsuit, if he so chooses, but for the reasons explained herein, he will not be able to do so in federal court.

Page 11 of 13
Case 2:23-cv-00552-JPS     Filed 03/12/25     Page 11 of 13     Document 56

### 4. CONCLUSION

For the reasons stated above, the Court must dismiss this case without prejudice. Defendants' motion to clarify Roundtree's settlement proposal, ECF No. 50, will be denied as moot, as will all motions filed by non-party Donald Reynolds.

Accordingly,

**IT IS ORDERED** that non-party Donald Reynolds's motions, ECF Nos. 48, 49, and 52, be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendants Michelle Reynolds and Uncaged Minds Publishing's motion to clarify Plaintiff Joshua Roundtree's settlement proposal, ECF No. 50, be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED without prejudice** for lack of subject matter jurisdiction.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 12th day of March, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.